UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ARGENT CLASSIC CONVERTIBLE ARBITRAGE FUND L.P.,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**COUNTRYWIDE FINANCIAL CORPORATION,** *et al.***,**<br><br>Defendants. | Case No. CV 07-07097 MRP (MANx)<br><br>**ORDER Granting Defendants' Motion to Dismiss Without Prejudice** |

This case is one of several related securities actions before this Court involving Countrywide Financial Corporation ("Countrywide")[1] and several individual insiders (Countrywide and the individuals collectively are

---

[1] On July 1, 2008, Countrywide completed a forward triangular merger into a subsidiary of Bank of America ("BofA") called Red Oak Merger Corporation ("Red Oak"). To effect the merger, Countrywide shareholders received shares of BofA in exchange for their Countrywide shares. Red Oak was then renamed Countrywide Financial Corporation. Countrywide Fin. Corp., Form 10-Q (Aug. 11, 2008). The merger postdates the class period and the allegations in the complaint. Therefore, "Countrywide," as used in this Order, refers to the entity as constituted before the merger.

-1-

1  "Defendants"). Plaintiff Argent Classic Convertible Arbitrage Fund L.P.
2  ("Argent") brings this action on behalf of purchasers of Countrywide debentures
3  sold as private placements under SEC Rule 144A. 17 C.F.R. § 230.144A.
4      In its November 28, 2007 order consolidating the Countrywide-related cases,
5  the Court kept this case separate because the private placement context presents
6  special challenges that entail complex fact issues. Most important, the Court
7  anticipated that the reliance element would require particular attention.
8  Specifically, the Court was concerned about Argent's pleading of the fraud on the
9  market presumption and actual reliance. Consol. Order 12-13 (Nov. 28, 2007). The
10 Court anticipated these reliance issues would be difficult both at the motion to
11 dismiss stage as well as in determining whether Argent is a suitable representative
12 for the class it purports to represent.
13     The Second Amended Complaint ("SAC") does not adequately plead
14 reliance. This Order addresses only the reliance allegations because their
15 inadequacy dwarfs all other objections to the SAC.
16     For the following reasons, the Court GRANTS Defendants' motions to
17 dismiss WITHOUT PREJUDICE.

18 <center>**I.**</center>
19 <center>**BACKGROUND**</center>
20 **A. The Debentures**
21     Argent brings this putative class action on Countrywide Series A Floating
22 Rate Convertible Senior Debentures Due 2037 ("Series A Debentures") and Series
23 B Floating Rate Convertible Senior Debentures ("Series B Debentures")
24 (collectively, "debentures"). The debentures are "senior unsecured obligations of
25 Countrywide and bear interest at a floating rate equal to three-month LIBOR, reset
26 quarterly, minus 3.5% for the Series A Debentures, and 2.25% for the Series B
27 Debentures." SAC at 18-19 n.4. Interest payments on the debentures are made
28 quarterly, starting July 15, 2007. *Id*. The debentures have stated maturity dates of

2037. *Id.* Additionally, holders of the debentures may be able to convert them, in whole or in part, into cash or Countrywide common stock after certain specified events and according to an adjustable conversion rate. ¶ 46.[2] Conversion is permitted, for example, when Countrywide's common stock trades in excess of a specified amount (the "strike price"). ¶ 47. This feature, according to Plaintiff, "inextricably links" the price of the debentures to the price of Countrywide common stock. ¶ 612. *See also* ¶ 47.

According to Argent, in May 2007, Countrywide sold $2 billion worth of Series A Debentures and $2 billion worth of Series B Debentures to three "Initial Purchasers,"[3] who resold some or all of their holdings pursuant to the terms of Countrywide's May 16, 2007 Debentures Offering Memorandum ("Offering Memorandum") to "qualified institutional buyers" under Rule 144A. The SAC alleges that, at one point, $4 billion in debentures "were listed for trading, and actively traded in the PORTAL Market of the Nasdaq Stock Market, Inc." ¶ 612. The SAC does not mention PORTAL again.

**B. Argent Classic Convertible Arbitrage Fund**

Argent is a private investment fund that specializes in convertible securities. ¶ 18. Its convertible investments appear to be made primarily for arbitrage. *See Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 669-70 (E.D. Pa. 2004). Argent spent millions trading in Countrywide debentures. 11/3/08 Hearing Tr. at 21:13-25. Its purchases continued through October 2007, well into the alleged corrective disclosures. Hearing Tr. at 68:6-7.

## II.

---

[2] All paragraph citations refer to the SAC.
[3] The SAC identifies Lehman Brothers, Inc., Citigroup Global Markets, Inc. and Banc of America Securities LLC. SAC ¶ 43.

## LEGAL STANDARD

A motion to dismiss tests whether the allegations in a complaint, if true, amount to an actionable claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In evaluating a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all allegations of material fact in the complaint and read the complaint in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, a court need not accept as true unreasonable inferences; nor need it accept legal conclusions cast in the form of factual allegations. *Sprewell*, 266 F.3d at 988. A court reads the complaint as a whole, together with facts appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).

Argent's first claim alleges a violation of § 10(b) of the Exchange Act against the Individual Defendants. A § 10(b) claim requires: (1) a material misrepresentation or omission; (2) scienter; (3) reliance; (4) economic loss; and (5) loss causation. *Dura Pharm. v. Broudo*, 544 U.S. 336, 341-42 (2005); 15 U.S.C. §78u-4(b)(4).

Argent's only federal claims are the § 10(b) claim and a § 20(a) (control person liability) claim that requires an underlying § 10(b) claim. Because the reliance element of the § 10(b) claim is inadequately pled, the Court declines to address the other § 10(b) elements and Argent's other claims.

The reliance element is subject to the pleading requirements of Rule 9(b) because it is one of the "circumstances constituting fraud" not subject to Public Securities Litigation Reform Act ("PSLRA") standards. Fed. R. Civ. Proc. 9(b); 15 U.S.C. § 78u-4(b). Therefore, reliance must be pled with particularity to state a claim. Fed. R. Civ. Proc. 9(b). *See Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("Fraud arises from plaintiff's reliance . . . ."); *Boyle v. Merrimack Bancorp,*

*Inc.*, 756 F. Supp. 55, 61 (D. Mass. 1991) (requiring reliance be pled with particularity where the face of the complaint suggests that plaintiff may not have relied on the market at all).

## III.
## DISCUSSION

**A.  How did Argent acquire its securities?**

Argent represented at the hearing on these motions that it purchased both under private placement memoranda and in the aftermarket. Hearing Tr. at 58:10-59:8. However, the SAC does not allege how Argent acquired the debentures. The SAC's sole allegation relative to the point is:

> Plaintiff purchased Debentures in direct <u>reliance</u> on the misrepresentations contained in the Debentures Offering Memorandum, among other misrepresentations by Defendants during the Class Period, and in <u>reliance</u> on the integrity of the market.

¶ 614 (emphasis added).

It is important because the claims based on the memoranda raise additional legal issues: Argent may have disclaimed reliance on anything but the memoranda, at least for its direct purchases. Hearing Tr. at 63:2-24.

**B.  On which market's integrity, if any, did Argent rely for aftermarket purchases?**

The Supreme Court in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), validated the rebuttable presumption of reliance in sufficiently efficient markets. An efficient market gives plaintiffs a shortcut for pleading reliance because an efficient market is presumed to impound new information—including fraudulent information—quickly into asset prices. If the market is a traditional one, such as the New York Stock Exchange ("NYSE"), and the security has a high trading volume, then reliance is easily pled with a simple allegation that the NYSE price was relied upon.

Argent errs by assuming that *Basic*'s fraud-on-the-market presumption

relieves it of the burden to plead reliance with particularity in all securities fraud cases. It does not.

Where the face of a complaint suggests that the a plaintiff may not have relied on the market at all, courts more vigorously enforce Rule 9(b)'s particularity requirement. Stringent Rule 9(b) enforcement is appropriate as to elements such as reliance, where the facts giving rise to the fraud action are within a plaintiff's knowledge. *Concha*, 62 F.3d at 1503; *Boyle*, 765 F. Supp. at 61. Even so, it is important to bear in mind that Rule 9(b) does not require plaintiffs to list every single word on which they relied; nor does it require plaintiffs to give laborious details in contravention of Rule 8(a)'s short and plain statement standard. But plaintiffs "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir.2001) (citation and quotations omitted).

### 1. Is PORTAL efficient?

Argent may be able to avail itself of *Basic*: it is possible that the PORTAL market for Countrywide debentures had enough trading volume by sophisticated investors for it to warrant the presumption. But what about the volume and traders on PORTAL makes it "open and efficient" in the sense *Basic* uses?

The SAC does not provide enough particularity to allow this inference. Instead, it makes conclusory statements about PORTAL's efficiency and states the par value of the debentures without connecting par value and efficiency. ¶ 612.

### 2. Is PORTAL the relevant market for the *Basic* presumption?

Worse yet, the SAC does not even allege whether Argent relied on the PORTAL price. Nowhere does Argent allege that it even had access to PORTAL. The SAC instead relies on the ambiguous allegation that Countrywide's alleged fraud "affected the public marketplace"—without specifying which marketplace. ¶

612.

Was it the PORTAL debentures market or the NYSE common stock price on which Argent relied? Were there other markets on which Argent relied? Did Argent even trade on PORTAL or did it do traditional over-the-counter transactions, thereby relying on what defense counsel referred to as a "spot market"? *See* Hearing Tr. at 18:2-7.

In sum, Argent cannot use *Basic* without particularized allegations about the relevant market. To the extent it relied on PORTAL, Argent must allege how and why PORTAL was efficient. To the extent it relied on the common stock price, it must allege how and why the prices were correlated.

The SAC instead states a conclusion. ¶ 612 ("[T]he prices of the Debentures were inextricably linked to the prices of Countrywide common stock, which also traded in an efficient market, the New York Stock Exchange").

**3. The face of the complaint and Argent's lead counsel papers suggest Argent may not have relied on any market in the traditional sense.**

Further, Argent is an arbitrageur and continued trading until late into Countrywide's alleged corrective disclosures. Hearing Tr. at 55:2-56:14, 68:6-7. An arbitrageur by definition takes advantage of inefficiencies between markets. Therefore, it may be that Argent relied on one market but not another because Argent believed one was inefficient relative to another. It could also be that Argent relied on a market or markets, as well as its own internal analysis of Countrywide's statements, to find an arbitrage opportunity.

This does not necessarily mean that Argent cannot establish "reliance" on a market in the legal sense—it becomes a matter of degree. Contrary to Defendants' suggestion, relying on an imperfectly efficient market is not the same as not relying on a market at all. Hearing Tr. 22:17-23:12. *Cf. Argent*, 315 F. Supp. 2d 666.

What was Argent's trading strategy? Given the length of time Argent alleges

it continued to buy the debentures, it is possible that Argent's strategy changed from time to time. If that is the case, Argent may have relied on one market at one point and another later.

Not all of these hypothetical questions must be answered at the pleading stage, of course—nothing in the Federal Rules require a plaintiff to disclose its entire case—but Argent needs to allege <u>how</u> it relied. It is not inappropriate to discuss an arbitrageur's strategy on a motion to dismiss. *See Argent*, 315 F. Supp. 2d at 669-70 (another court, in another case brought by Argent, discussing whether Argent's arbitrage strategy precludes reliance on a motion to dismiss).

The Court certainly does not conclude that an arbitrageur cannot take advantage of the securities laws. Defendants suggest that taking a "contrarian" position (relative to the market) negates all legal protection. Hearing Tr. 23:4, 26:12, 45:22. The Court disagrees: arbitrageurs have just as much right as anyone else to develop a trading strategy based on accurate disclosures. Further, if arbitrageurs promote market efficiency by helping move markets into harmony, protecting them against misstatements may be very important. Otherwise, arbitrageurs' research will yield inaccurate results and, in fact, increase the market effects of inaccurate issuer statements. *See Argent*, 315 F. Supp. 2d 666. *See also Hanton v. Dataproducts Corp.*, 976 F.2d 497, 506 (9th Cir. 1992) ("Differences in sophistication, etc., among purchasers have no bearing in the impersonal market fraud context, because dissemination of false information necessarily translates through market mechanisms into price inflation which harms each purchaser identically.") (quotations and citation omitted).

But Argent does not explain how it relied on anything.

-8-

## IV.
## CONCLUSION

This case presents a complex fact pattern. It requires applying long-established law to a very modern problem.

Argent disregards both these premises and assumes that the conclusory pleading of traditional securities cases will suffice. Defendants disregard the second premise and propound an overly simplistic view of markets. That is also unacceptable.

For the foregoing reasons, the SAC is DISMISSED WITHOUT PREJUDICE.

Argent is given the right to replead within 20 days of this Order. If Argent repleads, the parties are ADVISED that the Court will issue an accelerated briefing schedule.

IT IS SO ORDERED.

DATED: November 13, 2008

_____
Hon. Mariana R. Pfaelzer
United States District Judge