1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ARGENT CLASSIC CONVERTIBLE ARBITRAGE FUND L.P.,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**COUNTRYWIDE FINANCIAL CORPORATION, *et al*.,**<br><br>Defendants. | Case No. CV 07-07097 MRP (MANx)<br><br>**OMNIBUS ORDER Disposing of All Pending Motions in this Matter, Advising the Parties on Case Management, and Ordering the Parties to Meet and Confer** |

This case is one of several related securities actions before this Court involving Countrywide Financial Corporation ("Countrywide")[1] and individuals

---

[1] On July 1, 2008, Countrywide completed a forward triangular merger into a subsidiary of Bank of America ("BofA") called Red Oak Merger Corporation ("Red Oak"). In the transaction, Countrywide shareholders received shares of BofA in exchange for their Countrywide shares. Red Oak was then renamed Countrywide Financial Corporation. Countrywide Fin. Corp., Form 10-Q (Aug. 11, 2008). The merger postdates the class period and the allegations in the complaint. Therefore, unless otherwise noted or required by context, "Countrywide," as used in this Order, refers to the entity as constituted before the merger.

-1-

associated with Countrywide. Countrywide and the individuals collectively are "Defendants."

Plaintiff Argent Classic Convertible Arbitrage Fund L.P. ("Argent") brings this action on behalf of purchasers of certain Countrywide convertible debentures ("the Debentures") privately traded under SEC Rule 144A. 17 C.F.R. § 230.144A. The proposed class period runs from May 16, 2007 through November 21, 2007. Third Amended Compl. at 2.

In its November 28, 2007 order consolidating the Countrywide-related cases, the Court treated this case separately because the private placement context presents unique issues. Most important, the Court anticipated that the reliance element would require particular attention. Specifically, the Court was concerned about the private market's implications for fraud on the market and actual reliance. Consol. Order 12-13.

The Court held that the Second Amended Complaint ("SAC") did not adequately plead reliance. It was dismissed on November 13, 2008 with leave to amend. 2008 U.S. Dist. LEXIS 103148 (C.D. Cal.).

On December 3, 2008, Argent filed a Third Amended Complaint ("TAC")— its fourth pleading attempt. Defendants submitted motions to dismiss. In addition, Countrywide submitted a motion to strike. Argent and Defendants filed requests for judicial notice and oppositions to some of those requests. This Order's conclusion lists the title of each motion and its disposition.

This Order contains two substantive parts. The first part ("Legal Discussion") resolves all pending motions. The second part ("Case Management") orders the parties to meet and confer and provides some guidance for the parties' discussions.

# I.

# LEGAL DISCUSSION

**A. Incorporation of *Pappas'* statements of law.**

<u>Incorporation by reference.</u> The Court hereby adopts the <u>statements of law</u> made in the parallel public securities litigation ("*Pappas*") order of December 1, 2008. 588 F. Supp. 2d 1132. The present case contains different allegations and claims, though the Court acknowledges that the allegations and claims are similar in some respects to those in *Pappas*. The Court does <u>not</u> take notice of the *Pappas* allegations. It does, however, take notice of the SEC filings noticed in *Pappas*.

The parties to this case are advised not to construe the *Pappas* order more broadly than its text indicates. *See, e.g.*, *infra* Section II (noting that Argent has taken part of *Pappas'* damages discussion out of context); Pl.'s Opp. to Indiv. Defs.' Mtns. to Dismiss at 21 n.26, 26 (suggesting that this Court may have "found" facts in the *Pappas* order where it was actually noting that the parties had not yet disputed something, 588 F. Supp. 2d at 1199); Mozilo's Joinder at 2-3 (suggesting that the *Pappas* order's detailed analysis of alleged facts may have been misinterpreted by some third-party observers).[2]

<u>Supplement to *Pappas*.</u> The Ninth Circuit issued three relevant opinions

---

[2] Recent Supreme Court case law requires balancing inferences and determining whether they amount to a "strong inference of scienter." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The *Pappas* inferences were made, and the balancing undertaken, on the basis of alleged facts, construed in favor of the *Pappas* plaintiffs. *Pappas*, 588 F. Supp. 2d at 1185 (stating the law), 1192-93 (performing *Tellabs* balancing for the *Pappas* individual defendants on the *Pappas* allegations). A forthright legal analysis—undertaken for the benefit of all parties involved—is not "prejudging," as Mozilo suggests some outsiders may have interpreted *Pappas*. Mozilo's Joinder at 3. *See also Pappas* Status Conf. Tr. at 35:23-37:20 (Jan. 9, 2009) (counsel for Mozilo and the Court discussing Mozilo's Joinder and the Public Securities Litigation Reform Act- and Supreme Court-mandated analysis).

1 shortly before or after the *Pappas* order. The *Pappas* analysis is consistent with all
2 three.
3       In *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009), the Ninth
4 Circuit reconciled its pre- and post-*Tellabs* cases in a manner that is entirely
5 compatible with *Pappas*' reasoning. *Rubke* held that a post-*Tellabs* motion to
6 dismiss analysis may be done in two steps: (1) apply pre-*Tellabs* case law that may
7 suggest isolating allegations; and (2) if the complaint fails step one, proceed to a
8 *Tellabs* "holistic" analysis. *Rubke*, 551 F.3d at 1165. In *Pappas*, the Court used
9 pre-*Tellabs* case law to help guide, but not to limit, the *Tellabs* holistic analysis
10 rather than performing two discrete steps. 588 F. Supp. 2d at 1185-86. This
11 satisfies *Rubke*; a holistic analysis suffices, even if a complaint fails a pre-*Tellabs*
12 analysis.
13       In *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009), *as
14 superseded and amended by* 2009 WL 311070 (9th Cir. Feb. 10, 2009), the Ninth
15 Circuit reiterated that *Tellabs* requires a "holistic" analysis before dismissal and
16 confirmed that the two-step inquiry described above may be used. 2009 WL
17 311070, at *1, *5-6. The *Pappas* methodology accords with *Zucco*'s discussion of
18 how various allegations may be construed for purposes of giving rise to a strong
19 inference of scienter—including former employee allegations, accounting
20 allegations, certifications in SEC filings, and insider sales. *Cf. Zucco* at 2009 WL
21 311070, at *9-22.
22       And in *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008),
23 released shortly before the *Pappas* order, the Ninth Circuit discussed the doctrines
24 of "collective scienter" and "group pleading." *Glazer* discussed two collective
25 scienter cases—one from the Second and one from the Seventh Circuit. *Id.* at 743.
26 Collective scienter refers to a doctrine that allows a strong inference of scienter <u>as
27 to a corporation</u>, even though the allegations fail to raise a strong inference <u>as to
28 any individual</u> acting on the corporation's behalf. *Id.* The *Glazer* panel went on to

-4-

consider two other cases—from the Fifth and Eleventh Circuits—that rejected the related, but distinct, doctrine of "group pleading." *Id.* at 743-44. Group pleading allows a strong inference of scienter <u>as to individuals</u> on the basis of allegations that <u>corporate statements</u> may be imputed to "individuals with direct involvement in the everyday business of the company." *Id.* The *Glazer* panel left open the possibility of "collective scienter," though *Glazer* evaluated a case where "group pleading" was more likely in issue and *Glazer* seemed to approve "group pleading" dicta from the Seventh Circuit. *See id.* at 744.

      This Court does not express any opinion on either collective scienter or group pleading; neither doctrine is necessary to resolve the present motions. The Court therefore disregards ¶¶ 41-42 (alleging a "group pleading" theory).[3]

      This Court follows the *Glazer* panel in holding that a complaint must "plead . . . facts that constitute strong circumstantial evidence of" scienter. *Id.* (internal citation and quotation omitted). *See Glazer*, 549 F.3d at 746-47 (reconciling this standard with the position-based inferences made in *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008)). The relevant circumstances are those the complaint properly alleges, supplemented by facts appropriate for judicial notice. This is the same standard applied in *Pappas*. 588 F. Supp. 2d at 1186, 1189-91 (following *Berson* and allowing position-based inferences in a manner fully compatible with *Glazer*). Similarly, signing a document filed with the SEC is a relevant circumstance, but should almost never be sufficient to raise a strong inference. *Glazer*, 549 F.3d at 747-48.[4]

---

[3] These and all paragraph citations refer to the TAC.

[4] Countrywide submitted a notice of recent authority in *Sheldon Pittleman v. Impac Mortgage Holdings, Inc.*, 2009 WL 648983, 2009 U.S. Dist. LEXIS 18213 (C.D. Cal. Mar. 9, 2009). This Court monitors developments in mortgage-related securities cases, particularly those in this District. The Court notes (1) that *Impac*'s scienter analysis—as all scienter analyses—is closely bound to the allegations in that case; and (2) *Impac* overstates *Glazer* at 2009 WL 648983, at *3, 2009 U.S.

**B. Brief statements regarding some of the present motions' arguments.**

    **1. Evidentiary matters.**

    <u>Requests for judicial notice.</u> The Court need not address the substance of the arguments requesting and opposing judicial notice. The TAC and documents filed with the SEC, which are indisputably subject to notice, resolve the present motions.

    All requests for judicial notice are GRANTED only to the extent they request notice of documents filed with the SEC. All other requests for judicial notice are DENIED.

    <u>Nye affidavit.</u> The affidavit lodged by Argent is improper and unnecessary at this stage. Countrywide's motion to strike the Nye affidavit is GRANTED.

    <u>Audio recording.</u> Defendant McMurray asks this Court to take notice of an audio recording of an analyst conference call. Knowles Ex. A. The TAC contains excerpts from conference call transcripts. Those transcripts allegedly attribute statements to McMurray. McMurray argues that he is not the speaker in the recording and that the allegations and transcripts misattribute the statements to him.

    The Court reviewed the audio recording and has determined that the recording is not subject to judicial notice. McMurray proffers the recording not for the truth of the matters asserted in it, but to have this Court take notice that McMurray is not the speaker on the recording. However, "[i]t takes more than an exception to the hearsay rule . . . to justify judicial notice." *Doss v. Clearwater Title Co.*, 551 F.3d 634 (7th Cir. 2008). To avoid converting McMurray's motion to dismiss into one for summary judgment, Fed. R. Civ. Proc. 12(d), the identity of the voice must "not [be] subject to reasonable dispute" and must either be

---

Dist. LEXIS at *9-10: *Glazer* actually rejects the black-letter rule for which *Impac* cites *Glazer*. 549 F.3d at 744 (stating that the black-letter rule quoted by *Impac* was an "overstate[ment]" of Ninth Circuit law).

generally known or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 803(15). McMurray asks the Court to agree with the aural opinions of attorney-declarant Sean K. Knowles, not just for authentication but also for the opinion's substance. Knowles Decl. at ¶¶ 3-4. *See* Fed. R. Evid. 901(b)(5) (lay opinion may be basis for voice authentication and identification). The identity of the voice in the recording and the accuracy of transcripts cited in the TAC may be reasonably questioned.

The Court declines McMurray's invitation for an evidential inquiry at this stage, which would convert his motion to dismiss into a motion for summary judgment. The TAC adequately pleads that McMurray made the statements attributed to him.

The request to notice the audio recording is therefore DENIED. The audio recording attached to McMurray's motion to dismiss is STRICKEN on the Court's own motion.

**2. Motions to dismiss.**

Bank of America. Argent in the TAC added Defendant Bank of America "as the parent and successor-in-interest to Countrywide Financial Corporation." ¶ 24.[5]

There are limited exceptions to the rule that a parent does not assume an acquired subsidiary's preacquisition liabilities, even if the parent purchases assets of the subsidiary. Assuming that the broadest possible set of exceptions apply, Argent cannot hold BofA responsible for Countrywide's liabilities unless: (1) BofA takes actions in bad faith to prejudice Countrywide's creditors; (2) BofA expressly or impliedly assumes Countrywide liabilities; (3) there are facts that

---

[5] Argent also alleges that BofA took part in the Debentures' syndication and "issued analysts reports" on Countrywide." ¶ 25. Even if the allegations were legally relevant, many third parties took part in the Debentures' syndication and had analysts covering Countrywide. BofA appears to have been no more significant in syndication and analyst coverage than any other third party, rendering these courses of conduct immaterial.

1  allows a court to look beyond the form of the acquisition and hold that there has
2  been a *de facto* merger between BofA and Countrywide; or (4) BofA is a
3  continuation of Countrywide. *Knapp v. N. Am. Rockwell*, 506 F.2d 361 (3d Cir.
4  1974), *cert. denied* 421 U.S. 965 (1975).[6]

5  According to the TAC and judicially noticeable documents, Countrywide is
6  still a subsidiary acquired in a triangular merger. *See supra* n.1; BofA, Form 10-K
7  (Feb. 27, 2009). The Court notes that BofA has filed with the SEC statements to
8  the effect that it has purchased, for consideration, "substantially all" Countrywide
9  assets and has begun "integrat[ing]" some Countrywide operations or systems.
10 BofA, Form 10-K (Feb. 27, 2009); BofA, Form 8-K (Nov. 10, 2008).

11 Nothing properly before the Court suggests that BofA has done more than
12 expressly assume some liabilities in consideration of the acquisition (e.g.,
13 indemnity and insurance agreements), BofA, Form S-4/A (May 28, 2008), or
14 expressly assume liability on some debt in consideration of the asset purchase.
15 BofA, Form 8-K (Nov. 10, 2008). The TAC, together with judicially noticeable
16 documents, does not allege actions that have been taken in bad faith to prejudice

---

[6] The Court assumes the broadest possible set of exceptions because the parties have not addressed which body of state law provides the rule of decision—without limitation, California, Delaware, North Carolina, and New York law are all be contenders. The parties have presumably failed to address the point because the TAC does not explain on which transactions its allegations are based, and therefore BofA has no notice as to which state's law should govern.

At any rate, the Ninth Circuit has recognized that the four cited factors are based on state common law rules. *Atchison, Topeka, and Santa Fe Rwy. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358 (9th Cir. 1998), *as amended* (Oct. 14, 1998) (discussing the same factors in the context of a federal ERISA claim and particularly focusing on the "continuation" exception). And none of the potentially relevant bodies of state law appear to have tests more inclusive than *Knapp*.

The Court expresses no opinion on the correct body of law because (1) given Argent's pleading defects, any opinion would lack a basis in alleged facts; and (2) the result would be the same.

Countrywide's creditors—and the TAC certainly does not allege bad faith with the specificity required for alleging fraud. Nor does anything properly before the Court suggest that BofA has *de facto* merged with Countrywide. Finally, BofA is not a "continuation" of Countrywide. *See also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) (rejecting similar arguments in a transaction structured the same way as the Countrywide acquisition).

BofA's motion to dismiss is therefore GRANTED. The TAC's allegations against BofA are DISMISSED without leave to amend.

<u>Reliance—initial purchases pursuant to offering materials.</u> Argent alleges that it "read and reviewed," but not that it actually relied on, the Debentures' offering materials. ¶ 20. Argent's only proper reliance allegations with respect to the offering materials are actually a species of fraud on the market reliance: that the pricing of the Debentures' private offering was efficient for essentially the same reasons that Argent alleges the Debentures' aftermarket was efficient. *See* ¶¶ 48, 90, 706.[7]

---

[7] Argent's alleged reliance on "financial terms" does not save its actual reliance allegations. ¶ 19. The "financial terms" are not alleged to be false; rather, such "terms" would include interest rates, par value, maturity date, external triggering events, and other contractual "facts" that are nowhere alleged to be false. To the extent that the "financial terms" refer to the Debentures' initial offering prices or the Debentures' convertibility features, this allegation merely rephrases the fraud on the market argument.
  Argent further alleges that it actually relied on statements regarding "Countrywide's creditworthiness and liquidity." *Id.* Even if such an allegation could survive Rule 9(b), and it does not, it is unclear whether the creditworthiness statements were representations about, for example, major agencies' credit ratings for Countrywide—in which case the statements are not alleged to be false. Nor is it clear whether liquidity-related statements were false when made. Indeed, the willingness of Argent and others to make large purchases of the equity-linked debt, the debt aspects of which Argent admits had "extremely low" interest rates, Argent Opp. to Countrywide Motion to Dismiss at 24, suggests that Countrywide had access to substantial liquidity at the time the statements were made—even if that

Though <u>initial</u> public offering markets are generally not efficient, see *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 42-43 (2d Cir. 2006) (citing judicial discussions of the issue at post-pleading stages), the efficiency of a market for offerings—even private offerings—by a large, well established, closely watched, and frequently traded public company presents a closer question. SEC rules allow the offering price to vary with market demand because the offering price is not final until the effective date. *See* Countrywide, Form 8-K (May 22, 2007) (discussing the May 16, 2007 issuance and pricing of the Debentures and attaching the offering materials). Therefore, for largely the same reasons as those explained below in analyzing Argent's aftermarket efficiency allegations, Argent has adequately pled its own reliance on the integrity of market price-setting for the Debentures' offering.

<u>Reliance—aftermarket purchases.</u> Though Rule 9(b) requires enhanced reliance allegations, courts still cannot blur the line between a motion to dismiss and a motion for summary judgment. *Argent*, 2008 U.S. Dist. LEXIS 103148, at *8. "A well-pleaded complaint may proceed even if it strikes a savvy judge that

---

access was due, at least in part, to market misperceptions or Countrywide's misrepresentations. *See* ¶ 43. This Court has never analyzed liquidity-related allegations in a Countrywide case, except in *Pappas* to note (1) that Countrywide's ability to sell mortgage-backed securities into the secondary market was allegedly a primary source of its liquidity and therefore the secondary market's apetite for such securities—particularly Countrywide's mortgage-backed securities—was important to Countrywide's business, 588 F. Supp. 2d at 1152; and (2) to reject the *Pappas*' Defendants' fact-intensive arguments about macroeconomic forces, which were inappropriate on a motion to dismiss. *Id.* at 1173-74.

   Further, Argent's continued purchases after some alleged corrective disclosures may tend to show that Argent was not relying on particular statements later revealed to be false, but instead was relying primarily on market pricing—perhaps combined with some independent research or analysis. These are fact questions inappropriate for consideration on a motion to dismiss. This observation is relevant to the present motions only insofar as it leads to an inference that Argent relied on the market rather than actually relying on any particular statements.

actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 127 U.S. 1955, 1965 (2007).

Argent adequately pleads that the Debentures' aftermarket was efficient. Modern courts use a variety of factors to determine efficiency. *See Binder v. Gillespie*, 184 F.3d 1059, 1064-65 (9th Cir. 1999) (citing and discussing the factors from *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)), *as modified on denial of reh'g en banc* (July 26, 1999), *cert denied*, 120 S. Ct. 1158 (2000); *Zelman v. JDS Uniphase Corp.,* 376 F. Supp. 2d 956, 968-70 (N.D. Cal. 2005) (using the correlation between the common stock price of a company and the price of convertible debt instruments as a relevant factor in determining whether debt instruments' market was efficient).

The most important factors pointing to efficiency in this case are: (1) an adequately pled correlation between the Debentures' prices and Countrywide's widely and publicly traded common stock,[8] TAC at 34; (2) sophisticated market makers for the Debentures, ¶ 66; (3) trading in the Debentures by sophisticated institutional investors and arbitrageurs, such as Argent; (4) the fact that Countrywide was a large, closely watched company that was qualified to use SEC Form S-3; and (5) the presence of electronic trading platforms that allegedly provided access to market pricing for the Debentures, see ¶¶ 80-81.

No single factor is dispositive on its own. But, taken together, these factors adequately plead efficiency in this case. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 2006 WL 2161887, at *12, 2006 U.S. Dist. LEXIS 52991, at *56-58 (explaining that no single factor—such as a correlation

---

[8] The common stock is reasonably alleged to be highly efficient, quickly impounding new information. Correlation therefore suggests that the Debentures' prices impound new information efficiently, just as does the common stock. *See Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 127 S. Ct. 761, 729 (2008) (reiterating that an efficient market for the fraud on the market presumption is one where "public information is reflected in the market price of the security").

between markets—answers the efficiency question, but rather that efficiency is evaluated under the totality of the circumstances).

The parties make much of the fact that the securities traded privately with the aid of the PORTAL market, an electronic system run by NASDAQ that is available only to qualified investors. ¶¶ 56-59. However, "[t]he important question is whether the [security] is traded in a market that is efficient—one that obtains material information about a company and accurately reflects that information in the price"—not merely "[w]here the [security] is traded." *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (quoting *Hurley v. FDIC,* 719 F. Supp. 27, 33 (D. Mass. 1989)), *as modified on denial of reh'g en banc*, *cert denied*, 120 S. Ct. 1158 (2000). Those courts that have addressed fraud on the market and the efficiency of markets involving electronic trading platforms—such as PORTAL—which are available only to sophisticated investors but not the general public, have done so after detailed inquiry at a stage where it is appropriate to look beyond the pleadings. *Camden Asset Mgmt, L.P. v. Sunbeam Corp.*, 2001 WL 34556527, at *5-11, 2001 U.S. Dist. LEXIS 11022, at *16-36 (S.D. Fla. July 3, 2001) (discussing PORTAL at class certification).

Fairly construing the TAC's allegations, there is no reason to require Argent to <u>plead</u> additional facts on issues such as (1) whether the bid-ask spreads were sufficiently narrow for the market to be considered efficient enough for the fraud on the market presumption; (2) whether market makers' bid-ask spreads or trading prices were close enough to one another to allow the inference that there was an impersonal and efficient market for the Debentures; (3) whether there was enough trading volume to infer efficiency; or (4) whether the correlation between the prices of the Debentures and Countrywide common stock was tight enough to infer that Debentures' pricing impounds new information nearly as efficiently as the common stock price.

Defendants' observation that the Debentures' convertibility features may,

1  under some circumstances, break the alleged price link with common stock is well
2  taken. Likewise, the Debentures' unique debt features may also affect their degree
3  of correlation with common stock price movements and may influence a trader's
4  decisions. Further, the Court takes seriously Defendants' arguments that Argent's
5  trading strategy—especially with regard to the large positions taken late in the
6  alleged class period—is still not clear. *See Argent*, 2008 U.S. Dist. LEXIS 103148,
7  at *6, *12-14 (discussing arbitrage).
8     Indeed, there are many facts which may be proven, but which are not
9  properly before the Court at this stage, that may rebut the fraud on the market
10 presumption. Such facts, without limitation, (1) may have affected debt pricing
11 differently than they affected equity, such as the common stock, or (2) may show
12 that events, circumstances, information, beliefs, or strategies that are not yet
13 properly or fully before this Court caused, in whole or in part, Argent's trading
14 decisions. Some of these facts may go to elements other than reliance.
15     However, Argent may proceed, having adequately pled its <u>own</u> reliance on
16 an allegedly efficient market.
17     The Court does not address any other reliance doctrines that Argent contends
18 may be available.
19     <u>State claims.</u> Because the surviving federal claims comprise the same facts
20 to which the state claims relate, the state claims may proceed at this time.
21     The Court notes that California does not have a fraud on the market doctrine,
22 *Small v. Fritz Cos.*, 30 Cal. 4th 167, 180 (Cal. 2003), but expresses no opinion on
23 any other state reliance doctrines that Argent contends may exist.
24                              **II.**
25                     **CASE MANAGEMENT**
26     <u>Meet and confer.</u> The parties are ordered to meet and confer regarding the
27 next appropriate steps in this litigation. The parties shall meet and confer within 14
28 days of this Order's filing date. They shall file a joint status report and proposed

schedule within 15 days of this Order's filing date.[9] The proposed schedule shall take into account the Court's prior directions to expedite the case.

During the meet and confer, the parties may bear in mind the following:

Parallel proceedings. The parties should consider (1) the schedule of the parallel *Luther* case in state court; (2) the schedule in the ERISA case pending before Judge Walter of this District—particularly in light of the trial date already set in that case, *Alvidres v. Countrywide*, 07-CV-5810-JFW, Sched. Order at 30 (C.D. Cal. Sept. 22, 2008); and (3) harmonizing this case's schedule with the *Pappas* case. *Pappas*, 07-CV-5295-MRP, Notice of Meet and Confer (C.D. Cal. Jan. 12, 2009).

Fraud on the market. Argent has adequately pled its own reliance on an allegedly efficient market. This says nothing of Argent's ability to represent a class. But Argent has already begun making arguments about class representation. *See, e.g.*, Pl.'s Opp. to Countrywide's Mtn. to Dismiss at 31, 36. A motion for class certification is not before this Court. And, in any event, the Court has discretion regarding class certification's timing. Fed. R. Civ. Proc. 23(c)(1)(A); *Wright v. Schock*, 742 F.2d 541, 543-44 (9th Cir. 1984).

Argent correctly points out that institutional investors should not, by virtue of their being relatively well informed investors, be denied the fraud on the market presumption. But Defendants correctly suggest that rebutting the presumption is more likely when institutional investors undertake unique trading strategies. Class representation may be quite difficult in such circumstances.

In view of these observations, the parties should consider whether discovery targeted to Argent's decisions about trading the Debentures is an appropriate step

---

[9] Due to some recent confusion in the *Pappas* case, the Court clarifies: all dates shall be calculated by the date of an order's filing, not the date it is entered on the docket system. Weekends count; the electronic docket system enables counsel to file documents at any time, including weekends.

to take early in this case.

<u>Damages.</u> Argent has cited language from the *Pappas* order regarding Section 11 damages. Pl.'s Opp. to Countrywide's Mtn. to Dismiss at 37 n.49. This is not a Section 11 case, and the presumptive damages statute discussed in *Pappas* does not necessarily apply. This Court has made no statement on an appropriate damages measure in a case such as this. The Court does not now express any opinion on an appropriate damages measure. The Court does observe that damages on complicated instruments such as the Debentures here may present difficult issues, especially given the contingencies that affect the Debentures' convertibility and debt features. However, at this stage, the Court has not considered the implications, if any, of factors such as put rights, redemption rights, or tender offers.

/ / /

## III.

## CONCLUSION

All requests for judicial notice are GRANTED <u>only</u> to the extent that they request notice of documents filed with the SEC. All other requests for judicial notice are DENIED.

Countrywide's motion to strike the Nye affidavit is GRANTED.

The audio recording attached to McMurray's motion to dismiss is STRICKEN on the Court's own motion.

BofA's motion to dismiss is GRANTED on the ground that nothing before the Court adequately alleges or suggests that BofA has acquired the relevant Countrywide liabilities. The TAC's allegations as to BofA are DISMISSED without leave to amend.

Mozilo's motion to join Countrywide's motion to dismiss is GRANTED.

Countrywide's motion to dismiss is DENIED.

McMurray's motion to dismiss is DENIED.

Sambol's motion to dismiss is DENIED.

Sieracki's motion to dismiss is DENIED.

All parties are ORDERED to meet and confer regarding the next appropriate steps in this litigation. The parties shall meet and confer within 14 days of this Order's filing date. The parties shall file a joint status report and proposed schedule within 15 days of this Order's filing date.

IT IS SO ORDERED.

DATED:_March 19, 2009_____     _____
                                Hon. Mariana R. Pfaelzer
                                United States District Judge